David H. Stern (SBN: 196408)
dstern@winston.com
Christian E. Dodd (SBN: 235251)
cdodd@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543
Telephone: 213-615-1700
Facsimile: 213-615-1750

Attorneys for Plaintiff
JIM RYAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM RYAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ANTE5, INC., a Delaware corporation,<br><br>Defendant. | **Case No.  CV11-02886  RGK (SSx)**<br><br>Assigned to the Honorable R. Gary Klausner, U.S.D.J.<br><br>**PLAINTIFF JIM RYAN'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT ANTE5, INC.'S MOTION FOR LEAVE TO FILE A MOTION TO RECONSIDER OR, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO FED. R. CIV. P. RULE 12(b)(6)**<br><br>Hearing Date: September 19, 2011<br>Time:          9:00 a.m.<br>Courtroom:   850<br><br>Complaint Filed: April 11, 2011<br>FAC Filed:        May 24, 2011 |

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# **TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................ 2

    A.  Neither Party Signed the Contract at Issue. ................................. 2

    B.  Ante5 Demands Arbitration Against Ryan. ................................... 2

    C.  Ryan Seeks Declaratory Relief that He Need Not Arbitrate. ......... 2

    D.  JAMS Determines Ryan is Not Bound by the APA. ...................... 3

    E.  Ante5 Moves To Compel Arbitration and for Dismissal. ............... 3

    F.  Ante5 Fails To Present Evidence in Support of Its Motion. .......... 3

    G.  The Court Denies Ante5's Motion Because of this Failure. ........... 4

    H.  Ante5 Moves for Leave to Seek Reconsideration. ........................ 4

    I.  Ante5 Ostensibly Submits Evidence It Can Enforce the APA. ....... 4

III.  ANTE5'S RULE 60 MOTION SHOULD BE DENIED. ................................. 5

    A.  Ante5 Need Not Seek Leave to File a Rule 60 Motion. ................ 5

    B.  Ante5 Invokes Rule 60 for the Wrong Reason. ........................... 5

    C.  Ante5 Has Not Shown Excusable Neglect. .................................. 6

        1.  Legal Standard ............................................................... 6

        2.  There Is No Good Reason for the Delayed Submission. ...... 6

        3.  Ante5 Should Not Have Relied Solely on *Graham*. ........... 7

    D.  Ante5's Inexcusable Neglect Does Not Warrant Relief. ............... 8

        1.  Legal Standard ............................................................... 8

        2.  *Good Luck Nursing Home* has no bearing here. ............... 8

        3.  Ante5 Was Not Prevented from Submitting the Evidence. ... 9

    E.  Ante5 Has Not Shown the APA Can Be Enforced Against Ryan. ... 10

        1.  Arbitration against non-signatories is not favored. ........... 10

        2.  The test set forth in *Amisil* does not apply. ..................... 11

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

i

|  |  | 3. | That someone is an agent does not bind him to a contract. | 12 |
|---|---|---|---|---|
|  |  | 4. | Forcing non-signatories to arbitrate is rare. | 13 |
|  |  | 5. | Ante5 submits no evidence that Ryan is bound to the APA. | 13 |
|  |  | 6. | Ryan is not bound to the APA "as a matter of law." | 14 |
| IV. | ANTE5 IS A PROPER DEFENDANT IN THIS ACTION. | | | 16 |
| V. | ANTE5'S RULE 12(b)(6) MOTION SHOULD BE DENIED. | | | 17 |
|  | A. | Successive Motions Invoking Rule 12 Violate Rule 12. | | 17 |
|  | B. | The Amended Complaint States a Claim for Relief. | | 18 |
|  | C. | Converting this to a Rule 56 Motion Would Be Unavailing. | | 19 |
| VI. | CONCLUSION | | | 20 |

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Alvarez-Machain v. United States*,
   2004 WL 5394005 (C.D. Cal. Oct. 26, 2004) .................................................10

*Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*,
   622 F. Supp. 825 (N.D. Cal. 2007)...................................................................11

*Bel-Ray Co. v. Chemrite (Pty) Ltd.*,
   181 F. 3d 435 (3d Cir. 1999) ..............................................................12, 14, 18

*Boston Telecommunications Group, Inc. v. Deloitte Touche Tohmatsu*,
   No. 04-15983, 2007 WL 2827681 (9th Cir. Sept. 27, 2007)...........................11

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
   345 F.3d 347 (5th Cir. 2003) ...........................................................................13

*Britton v. Co-op Banking Group*,
   4 F.3d 742 (9th Cir. 1993) ........................................................................6, 7, 9

*Bugna v. Fike*,
   80 Cal. App. 4th 229 (2000) ............................................................................15

*CD Partners, LLC v. Grizzle*,
   424 F.3d 795 (8th Cir. 2005) ...........................................................................11

*Chan v. Society Expeditions, Inc.*,
   39 F.3d 1398 (9th Cir. 1994) ...........................................................................15

*Chastain v. Union Sec. Life Ins. Co.*,
   502 F. Supp. 2d 1072 (C.D. Cal. 2007)...........................................................10

*Chicago Mill & Lumber Co. v. Boatmen's Bank*,
   234 F. 41 (8th Cir. 1916) .................................................................................16

*Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*,
   709 F.2d 190 (3d Cir. 1983) ............................................................................16

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ...........................................................10, 11, 13, 16

*Consolidated Rock Products Co. v. DuBois*,
   312 U.S. 510 (1941)..........................................................................................16

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

iii

*Covington v. Aban Offshore Ltd.*,
  __ F.3d __, 2011 WL 3500992 (5th Cir. 2011)..............................................12

*Creative Telecommunications Inc. v. Breeden*,
  120 F. Supp. 2d 1225 (D. Haw. 1991)..............................................11, 12

*Engleson v. Burlington N. R.R. Co.*,
  972 F.2d 1038 (9th Cir. 1992) ..............................................7

*Good Luck Nursing Home, Inc.*,
  636 F.2d 572 (D.C. Cir. 1980)..............................................8

*Goodyear Tire & Rubber Co. v. Unochrome Int'l Ltd.*,
  unpublished (previously published at 104 Cal. App. 3d 518 (1980)) ...............16

*Graham v. FEMA*,
  149 F.3d 997 (9th Cir. 1998) ..............................................7

*Janda v. T-Mobile, USA, Inc.*,
  2009 U.S. Dist. LEXIS 24395 (N.D. Cal. Mar. 13, 2009) .........................18

*Johnson v. Couturier*,
  2007 U.S. Dist. LEXIS 81848 (E.D. Cal. Oct. 25, 2007)...........................18

*Kaplan v. First Options of Chicago, Inc.*,
  19 F.3d 1503 (3d Cir. 1994) ..............................................12

*Kilgore v. KeyBank, N.A.*,
  712 F. Supp. 2d 939 (N.D. Cal. 2010)..............................................18

*Kujawski v. Solis*,
  2009 U.S. Dist. LEXIS 32887 (S.D. Ill. Apr. 17, 2009) ..........................18

*Latshaw v. Trainer Wortham & Co.*,
  452 F.3d 1097 (9th Cir. 2006) ..............................................7, 8, 9

*Lee v. Chica*,
  983 F.2d 883 (8th Cir. 1993) ..............................................11

*Lu v. Dryclean-U.S.A. of California, Inc.*,
  11 Cal. App. 4th 1490 (1992) ..............................................16

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
  858 F.2d 509 (1988) ..............................................15

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

iv

*McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 16*,
   859 F.2d 1382 (9th Cir. 1988) ...................................................................10

*McLoughlin v. L. Bloom Sons Co.*,
   206 Cal. App. 2d 848 (1962) .....................................................................16

*Neifeld v. Steinberg*,
   438 F.2d 423 (9th Cir. 1971) ......................................................................17

*Plotkin v. Pac. Tel. & Tel. Co.*,
   688 F.2d 1291 (9th Cir. 1982) ......................................................................9

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ........................................................................5

*Securities and Exchange Commission v. Platforms Wireless Int'l Co.*,
   617 F.3d 1072 (9th Cir. 2010) ......................................................................6

*Thomas v. Housing Authority of County of Los Angeles*,
   2005 WL 6136322 (C.D. Cal. Sept. 22, 2005) ...........................................5

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n*,
   64 F.3d 773 (2d Cir. 1995) ........................................................13, 19, 20

*U.S. v. Molen*,
   2011 WL 1810449 (E.D. Cal. May 9, 2011) .............................................17

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   556 F.2d 406 (9th Cir. 1977) ......................................................................15

*Yumul v. Smart Balance, Inc.*,
   2011 WL 1045555 (C.D. Cal. March 14, 2011)..........................................17


STATUTES

9 U.S.C. § 4.........................................................................................................3

9 U.S.C. § 16(a)(1)(B) .......................................................................................5

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(1) ..................................................................1, 3, 17

Fed. R. Civ. P. 12(b)(6) .......................................................................*passim*

Fed. R. Civ. P. 12(c) ...............................................................................18

Fed. R. Civ. P. 12(d) ..............................................................................19

Fed. R. Civ. P. 12(g)(2) ...............................................................1, 17, 18

Fed. R. Civ. P. 60(b)(1) ..................................................................1, 6, 7

Fed. R. Civ. P. 60(b)(6) ..................................................................1, 8, 9

**LOCAL RULES**

L.R. 7-4 ..................................................................................................19

L.R. 7-9(a) ...............................................................................................5

L.R. 56-1 ................................................................................................19

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

When it re-filed its motion to compel arbitration, Defendant Ante5, Inc. made the deliberate and strategic decision to not submit any evidence that it has standing to enforce a contract to which it is not a signatory.  Now ruing that decision, Ante5 seeks a mulligan by requesting permission to submit evidence—evidence Ante5 admits it had at its fingertips when it filed its earlier motion—under the auspices of Federal Rule of Civil Procedure 60(b).  Ante5, however, cannot get past the threshold of showing excusable neglect—which is required under Rule 60(b)(1)—or circumstances beyond its control that prevented it from proceeding with its motion in a proper fashion—which is required for a finding of inexcusable neglect under Rule 60(b)(6). Therefore its motion for reconsideration should be denied.

Even assuming the Court permits Ante5 to belatedly submit this evidence, the motion to compel arbitration would still be unavailing because Ante5 has not shown and cannot show that the contract containing the arbitration clause can be enforced against non-signatory Plaintiff Jim Ryan.  All of Ante5's arguments to the contrary hinge on its claim that it only needs to show a bare nexus between its allegations against Ryan and the contract.  (Motion at 13:14-19.)  This is not the law.  Thus, even if the Court were to grant Ante5 relief from its strategic misstep, the motion for reconsideration should be denied.

Ante5 also seeks relief—for a second time—under Rule 12.  In its earlier motion, Ante5 invoked Rule 12(b)(1) and argued "the Court lacks subject matter jurisdiction as Ryan is bound by the APA's arbitration provision."  (DE 27 at 15:15-16.)  Here, Ante5 invokes Rule 12(b)(6) and asserts "Ryan cannot state a theory on which relief can be granted because he is bound by the arbitration agreement as a matter of law."  (Motion at 17:25-26.)  Ante5 could have made this argument before and thus its new Rule 12 motion is barred by Rule 12(g)(2), which provides that "a party that makes a motion under this rule must not make another motion under this

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1

rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Therefore, Ante5's second Rule 12 motion should be denied.

In addition to this procedural infirmity, Ante5's motion fails on the merits as well.  Ante5 has not shown "as a matter of law" that Ryan is bound by the contract containing an arbitration clause.  Nor has it provided any evidence to support such a claim.  Although the Court need not reach this issue, for this reason too, Ante5's second Rule 12 motion should be denied.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Neither Party Signed the Contract at Issue.

Neither Ryan nor Ante5 are signatories to the contract at issue containing the arbitration clause.  (Motion at 2:4-5.)  Rather, the signatories to the Asset Purchase Agreement ("APA") are Peerless Media, Ltd. ("Peerless") and WPT Enterprises, Inc. ("WPTE").  (*Id.*)

Peerless is a Gibraltar private limited company and a wholly-owned (indirect) subsidiary of bwin.party digital entertainment Plc ("bwin.party").  (Declaration of Jim Ryan ("Ryan Decl."), DE 37-2 ¶ 4.)  bwin.party was formerly known as PartyGaming Plc ("Party Gaming").  (*Id.* ¶ 3.)

Ryan, a citizen of Canada, is the Co-Chief Executive Officer of bwin.party, which – as noted above – was formerly known as PartyGaming.  (*Id.* ¶¶ 2-3.)

### B.   Ante5 Demands Arbitration Against Ryan.

On or about March 18, 2011, Ante5 sought to commence an arbitration proceeding against Peerless and Ryan before JAMS (the "Arbitration").  (Ante5 RJN Ex. A.)  Ante5 brought the Arbitration "pursuant to the APA's arbitration agreement." (Motion at 2:17-23.)

### C.   Ryan Seeks Declaratory Relief that He Need Not Arbitrate.

On April 11, 2011—after Ante5 refused to drop Ryan from the Arbitration and before the selection of an arbitrator—Ryan initiated this action seeking a declaratory judgment that he is not obligated to arbitrate against Ante5 and an order permanently

2

enjoining Ante5 from attempting to assert claims against him in the Arbitration.
(DE 1.)  Ryan sought (and was granted) leave to file the complaint under seal.  (DE 4.)

### D.    JAMS Determines Ryan is Not Bound by the APA.

On April 26, 2011, JAMS sent a letter stating that, based on a review by the
JAMS National Arbitration Committee ("NAC"), "Mr. Ryan is not a signatory to the
agreement and there is no nexus provided to establish he agreed to be individually
bound by the arbitration clause.  The NAC has determined that at this time, the matter
will proceed as against Peerless Media only."  (Shah Decl. (DE 27-1) Ex. A.)  At the
same time, JAMS noted that the decision was "without prejudice."  (*Id.*)  Ante5
continues to assert that Ryan is required to submit to arbitration.

### E.    Ante5 Moves To Compel Arbitration and for Dismissal.

On May 4, 2011, Ante5 filed its initial Motion to Compel Arbitration and
Dismiss Proceedings.  (DE 18.)  After Ryan filed his opposition (DE 21), the Court
took Ante5's motion off calendar without prejudice to re-filing.

On May 31, 2011, Ante5 re-filed its motion to compel, captioning its new
motion:  Motion to Compel Arbitration, Strike the First Amended Complaint and
Dismiss Proceedings.  (DE 27.)  Among other things, Ante5 sought an order "pursuant
to 9 U.S.C. § 4 directing that . . . Ryan . . . be joined" in the Arbitration.  (*Id.* at i:4-7.)
Ante5 also sought "an order of dismissal pursuant to Fed. R. Civ. P. 12(b)(1), for lack
of subject matter jurisdiction."  (*Id.* at i:13-14.)

### F.    Ante5 Fails To Present Evidence in Support of Its Motion.

Although it had "ample notice" that Ryan challenged Ante5's standing to
enforce the contract "since the original May 16th Opposition," Ante5 "nonetheless
failed to provide evidence of such to the Court."  (Order , DE 45 at 3.)  Rather, Ante5
"argue[d] that under *Graham v. FEMA*, allegations in a complaint must be taken as
true for the purposes of a motion to dismiss for lack of standing."  (*Id.*)

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

3

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

**G.     The Court Denies Ante5's Motion Because of this Failure.**

On August 2, 2011, the Court denied Ante5's motion in its entirety.  As to the motion to compel arbitration, the Court held that Ante5 "has failed to show the Court that it has standing to invoke the APA."  (*Id.* at 3.)  The Court also denied Ante5's Rule 12 motion finding Ante5's reliance on *Graham* "misplaced" because "*Graham* addressed only constitutional and prudential standing and is inapplicable to [Ryan's] challenge to [Ante5's] contractual standing to invoke the APA."  (*Id.*)

**H.     Ante5 Moves for Leave to Seek Reconsideration.**

Although the Court denied Ante5's motion, which included a Rule 12(b) attack on the complaint, Ante5 has not yet answered.  Rather, on August 16, 2011, Ante5 filed a motion captioned "Motion for Leave to File a Motion to Reconsider or, in the Alternative, To Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(6)" (the "Motion"). (DE 47.)  In its notice of motion, Ante5 explains that it is seeking "an order granting leave of court . . . to move for reconsideration of the August 2, 2011 Order Denying Defendant's Motion to Compel Arbitration pursuant to Fed. R. Civ. P. 60(b)."  (*Id.* at i.)  It argues that leave of Court to pursue its Rule 60 motion is warranted for three reasons:  (1) "the strong federal policy in favor of arbitration," (2) "the supporting evidence of contractual standing was not previously submitted . . . on a good faith basis in law," and (3) "the Court's interest in preventing wasteful and costly litigation . . . ."  (*Id.* at 1:17-2:3.)

In the alternative, Ante5 seeks "an order pursuant to Fed. R. Civ. P. 12(b)(6) directing the First Amended Complaint filed by Plaintiff Jim Ryan to be dismissed in its entirety for failure to state a claim."  (*Id.* at i.)  According to Ante5, "the complaint fails to state a claim supportable by any cognizable legal theory" (*id.* at 13:7-8) because "as a matter of law, Ryan is an agent of Peerless" (*id.* at 15:1).

**I.     Ante5 Ostensibly Submits Evidence It Can Enforce the APA.**

While seeking to forestall the Rule 26(f) conference in this case, Ante5 now seeks to submit evidence to the Court to support the claim that it is "the successor in

4

interest to WPTE's rights under the APA." (Motion at 2:17-18.) Specifically, Ante5 contends that "conclusive evidence in support of Ante5's successor-in-interest status is attached hereto as Exhibits A-F of Ante5's First Request for Judicial Notice." (*Id.* at 4:14-16.) This evidence, however, was available to Ante5 when it filed its first motion to compel as Exhibits A-F all predate that motion and are publicly available. According to Ante5, this evidence was "produced on June 10, 2011, ten days prior to Ryan's filing of his [earlier] Opposition." (Reply, DE 39 at 2:3-4.) But it was not produced to Ryan. Rather, Ante5 produced this information to Peerless in the Arbitration. (Motion at 4:1 [the evidence was "provided to counsel for Ryan by Ante5 in the Arbitration"].)

### III.   ANTE5'S RULE 60 MOTION SHOULD BE DENIED.

####   A.   Ante5 Need Not Seek Leave to File a Rule 60 Motion.

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding." There is nothing in this rule or the Local Rules that requires Ante5 to seek leave to file a Rule 60 motion. *Compare* Northern District of California Local Rule 7-9(a) ("No party may notice a motion for reconsideration without first obtaining leave of Court to file the motion.").

####   B.   Ante5 Invokes Rule 60 for the Wrong Reason.

According to Ante5, "Rule 60(b) provides the proper standard for [its] proposed motion for reconsideration because a final order has been entered." (Motion at 8 n.4.) But there has been no final order. Any order denying a motion to compel arbitration is interlocutory. *E.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 991 (9th Cir. 2010). At the same time, such an order is appealable. 9 U.S.C. § 16(a)(1)(B). Ante5 can still seek reconsideration under Rule 60(b) because Rule 60(b) applies to "final judgments *and appealable interlocutory orders*." *Thomas v. Housing Auth. of County of Los Angeles*, 2005 WL 6136322, at *4 (C.D. Cal. Sept. 22, 2005) (emphasis added).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## C.   Ante5 Has Not Shown Excusable Neglect.[1]

Under Rule 60(b)(1), "the court may relieve a party . . . from a[n] . . . order for the following reasons . . . mistake, inadvertence, surprise, or excusable neglect." Ante5 is not arguing that its failure to submit documents was a mistake, inadvertent, or a result of surprise.  Rather, it is arguing that its "non-submittal of documents" was "based on good faith reliance on law" (Motion at 8:3-5), i.e., excusable neglect.

### 1.   Legal Standard

"The determination of whether neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Sec. & Exch. Comm'n v. Platforms Wireless Int'l Co.*, 617 F.3d 1072, 1100 (9th Cir. 2010).  "At least four factors are considered: '(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith.'"  *Id.* (quoting *Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009)).  "In some circumstances, the prejudice a denial would cause to the movant must also be considered, but it is not a factor that must be assessed 'in each and every case.'"  *Id.* (quoting *Lemoge*, 587 F.3d at 1195).

### 2.   There Is No Good Reason for the Delayed Submission.

Here, there is no reason for Ante5's delay in submitting the evidence it now wants to present to the Court.  Where a non-signatory claims that it is a successor-in-interest to the signatory of an agreement, the non-signatory must "prove the validity of his ownership claims" and "come forth with ***evidence*** that the assignor meant to assign rights and obligations under the contracts."  *Britton v. Co-op Banking Group*, 4 F.3d 742, 746 (9th Cir. 1993) (emphasis added).

Ante5 knew about this rule when it filed the motion the Court denied.  It relied on *Britton* in its original motion (DE 18 at 9-10) and Ryan briefed this rule in his

---

[1]   Because Ante5 sets forth the legal standard for granting relief under Rule 60(b)(1) (Motion at 8:9-10), it is assumed that Rule 60(b)(1) is one of the grounds on which it bases the Motion.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

1   original opposition (DE 21 at 4-5).  Further, as the Court found, Ante5 had "ample

2   notice that [Ryan] ha[d] challenged [its] standing" because Ryan first raised the issue

3   in his "original May 16th Opposition."  (Order, DE 45 at 3.)  Ante5 "nonetheless

4   failed to provide evidence of such to the Court."  (*Id.*)

5        Ante5 admits that it had the evidence in question at its fingertips.  On "June 10,

6   2011, ten days prior to Ryan's filing of his Opposition," Ante5 produced the

7   documents to Peerless in the Arbitration.  (Reply, DE 39 at 2:3-4; *see also* Motion at

8   4:1.)  Yet, Ante5 deliberately chose not to submit this evidence to the Court.

9        **3.      Ante5 Should Not Have Relied Solely on *Graham*.**

10       Rather than submit the evidence to support its earlier motion, Ante5 argued that

11  it need not do so under *Graham v. FEMA*, 149 F.3d 997 (9th Cir. 1998).  But as the

12  Court explained, Ante5's "reliance on *Graham* is misplaced" because "*Graham*

13  addressed only constitutional and prudential standing and is inapplicable to [Ryan's]

14  challenge to [Ante5's] contractual standing to invoke the APA."  (Order, DE 45 at 3.)

15  While Ante5 claims that it was relying on *Graham* "pursuant to a good faith basis in

16  law" (Motion at 4:2), it is entirely unclear—and Ante5 offers no explanation—why

17  Ante5 thought a case about constitutional and prudential standing could excuse it from

18  the rule of *Britton*, a case directly on point that it knew about and that Ryan cited.

19       "For purposes of subsection (b)(1), parties should be bound by and accountable

20  for the deliberate actions of themselves and their chosen counsel. This includes not

21  only an innocent, albeit careless or negligent, attorney mistake, but also intentional

22  attorney misconduct.  Such mistakes are more appropriately addressed through

23  malpractice claims."  *Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th

24  Cir. 2006); *see also Engleson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir.

25  1992).  In sum, Ante5 has not shown *excusable* neglect.  Thus, its reliance on Rule

26  60(b)(1) is unavailing.

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

7

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

### D.      Ante5's Inexcusable Neglect Does Not Warrant Relief.

Likely because Ante5 knows it cannot show that its strategic misstep is excusable neglect, Ante5 argues that "even if the Court deems [its] failure to present evidence [of standing] in the first instances as inexcusable," that is of no moment under the rule of *Good Luck Nursing Home, Inc.*, 636 F.2d 572 (D.C. Cir. 1980).

#### 1.      Legal Standard

Orders "are not often set aside under Rule 60(b)(6)."  *Latshaw*, 452 F.3d at 1103.  "Rather, the Rule is 'used sparingly as an equitable remedy to prevent manifest injustice' and 'is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment.'"  *Id.* (quoting *United States v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005)).  "Accordingly, a party who moves for such relief 'must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with ... the action in a proper fashion.'"  *Id.* (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002)).

#### 2.      *Good Luck Nursing Home* has no bearing here.

In *Good Luck Nursing Home*, "a provider of health services under the Medicare program" was denied reimbursement of certain legal and accounting expenses and sought review of the denial in federal court.  *Id.* at 574.  After the district court granted summary judgment in the provider's favor and entered judgment, "it was revealed that the expenses in question were incurred primarily in defending a civil action against the appellant and others in which Medicare fraud and overpayment had been alleged."  *Id.*  The Government sought relief from the judgment under Rule 60(b)(6).  *Id.* at 576.  The district court granted the Government's motion, vacated its judgment, directed that the expenses related to the civil action could not be reimbursed, and remanded the case to the agency "for a de novo consideration of the appellant's request for reimbursement."  *Id.*  The provider appealed.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

The Court of Appeal affirmed because "[i]f [the] initial judgment had stood, the Government would have been compelled to pay attorneys' fees to what appeared to be the losing side in an action for fraud." *Id.* at 577.  Indeed, "Congress could not have intended that the Medicare program subsidize those who defraud it in their litigative maneuvers to wriggle off the hook." *Id.*  It was in this context that the D.C. Circuit set forth "When a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper even though the original failure to present that information was inexcusable." *Id.*

This case is nothing like *Good Luck Nursing Home* and thus the "rule" of *Good Luck Nursing Home* is entirely inapplicable here.  As noted above, Ryan first challenged Ante5's standing to enforce the APA in its May 16 opposition and in that same brief, putting Ante5 on notice  of the rule of *Britton*.  Moreover, Ante5 should have known about the rule of *Britton* before May 16 because it cited *Britton* in support of its initial motion to compel.  (DE 18 at 9-10.)

### 3.    Ante5 Was Not Prevented from Submitting the Evidence.

As noted above, a party that seeks relief under Rule 60(b)(6) must demonstrate the existence of "circumstances beyond his control that prevented him from proceeding with ... the action in a proper fashion." *Latshaw*,  452 F.3d at 1103.  Ante5 cannot make such a showing.  All of the evidence Ante5 now seeks to submit is a matter of public record and thus was available to Ante5 at the time it filed its original motion.  Ante5 had been aware of *Britton* since at least May 4, 2011 because it relied on *Britton* in its original motion.  (DE 18 at 9-10.)  In mid-May 2011, Ryan put Ante5 on notice that it was contesting Ante5's standing to enforce the APA (Order, DE 45 at 3) and expressly briefed *Britton* (DE 21 at 4-5).  Ante5's failure to submit any evidence to support its motion was a calculated strategic move that it now regrets.  A regretted strategic move is not an "extraordinary circumstance" that warrants relief under Rule 60(b)(6).  *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291,

9

1293 (9th Cir. 1982); *Alvarez-Machain v. United States*, 2004 WL 5394005, at *7-*8 (C.D. Cal. Oct. 26, 2004). Thus, Ante5's motion for reconsideration should be denied.

### E.   Ante5 Has Not Shown the APA Can Be Enforced Against Ryan.

Even assuming, Ante5 could persuade the Court that it should enter a finding of neglect, the motion for reconsideration should be denied because Ante5 has not shown that the APA can be enforced against Ryan.

### 1.   Arbitration against non-signatories is not favored.

As the Court recognized in its Order denying Ante5's motion to compel arbitration, the Federal Arbitration Act "represents the 'declaration of a liberal federal policy' favoring arbitration." (Order, DE 45 at 2, quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).) To Ante5, this is all but dispositive. (Motion at 3:20-21, 4:5-6; 4:10-11; 7:13-15; 7:18-19 & 9:23.) But under certain circumstances, this "liberal federal policy" gives way. Indeed, the "liberal federal policy favoring arbitration agreements" is "inapposite" where the issue is "whether a particular party is bound by the arbitration agreement." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006).

According to Ante5, the Court should simply ignore this precedent. It argues that Ryan "splits hairs by arguing that a footnote in . . . *Comer* . . . somehow invalidates years of Supreme Court precedent favoring arbitration" and states that Ryan's reading of *Comer* "is patently incorrect." (Reply, DE 39 at 3:18-22.) Ante5 is wrong. In *Comer*, "the Ninth Circuit squarely addressed . . . whether the policy established by the FAA applied in adjudicating the question of whether a non-signatory was subject to a contractual arbitration clause." *Chastain v. Union Sec. Life Ins. Co.*, 502 F. Supp. 2d 1072, 1075 n.2 (C.D. Cal. 2007). Moreover, "[g]iven the recency and specificity of the Ninth Circuit's comments in *Comer*," the *Chastain* court found that it was "not bound to decide the . . . case [before it] pursuant to the liberal policy favoring arbitration." *Id.*; *see also McKinstry Co. v. Sheet Metal Workers' Int'l*

**Winston & Strawn LLP**
**333 South Grand Avenue**
**Los Angeles, CA 90071-1543**

1    *Ass'n, Local Union No. 16*, 859 F.2d 1382, 1384 n.2 (9th Cir. 1988) ("the presumption

2    is that the agreement does ***not*** apply to" a non-signatory) (emphasis added).

### 2.    The test set forth in *Amisil* does not apply.

4        According to Ante5, the proper analysis of whether Ryan can be bound to the

5    APA under agency principles is if "(1) the wrongful acts of the agents for which [the

6    signatories] are sued relate to their behavior as agents or in their capacities as agents . .

7    . and (2) the claims against the agents arise out of or relate to the contract containing

8    the arbitration clause." (Motion at 13:13-19, quoting and adding brackets to *Amisil*

9    *Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 825, 835 (N.D. Cal.

10   2007).) But in *Amisil*, the court was "confronted with the situation of a nonsignatory

11   seeking to compel a signatory to arbitrate." *Id.* at 831. And the court rejected

12   Amisil's argument that "there should be no difference" between the situation where a

13   non-signatory seeks to compel a signatory to arbitrate and where a signatory seeks to

14   compel a non-signatory to arbitrate. *Id.* As explained by another court that *Amisil*

15   quoted (622 F. Supp. 2d at 831): "The test for determining whether a nonsignatory

16   can force a signatory into arbitration is different from the test for determining whether

17   a signatory can force a nonsignatory into arbitration." *CD Partners, LLC v. Grizzle*,

18   424 F.3d 795, 799 (8th Cir. 2005); *see also Comer*, 436 F.3d at 1101 (noting that "[i]n

19   the arbitration context," equitable estoppel "has generated two lines of cases,"

20   depending on whether signatories are trying to force non-signatories to arbitrate or

21   non-signatories are trying to force signatories to arbitrate). Thus, the test set forth in

22   *Amisil* does not govern here.[2]

23       In the past, Ante5 has argued to the contrary citing *Creative*

24   *Telecommunications Inc. v. Breeden*, 120 F. Supp. 2d 1225 (D. Haw. 1991), and *Lee*

25   *v. Chica*, 983 F.2d 883 (8th Cir. 1993). (DE 27 at 9:8-9.) But as recently recognized

---

27   [2]    Ante5 also relies on *Boston Telecommunications Group, Inc. v. Deloitte Touche*
      *Tohmatsu*, No. 04-15983, 2007 WL 2827681 (9th Cir. Sept. 27, 2007). (Motion at 14:
28   18-23.) Like *Amisil*, this case involved a non-signatory seeking to compel arbitration
      against a signatory *Id.*, 2007 WL 2827681, at *4. Therefore, it too is inapplicable.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

by the Fifth Circuit, *Creative Telecommunications* simply relied on *Lee*, and *Lee* not

only is in conflict with decisions in the Second and Third Circuits, but it also "appears

to have been impliedly overruled by subsequent caselaw." *Covington v. Aban*

*Offshore Ltd.*, ___ F.3d ___, 2011 WL 3500992, at *4 (5th Cir. 2011).  Indeed,

"recently, in *Nitro Distributing, Inc. v. Alticor, Inc.*, 453 F.3d 995 (8th Cir. 2006), the

Eighth Circuit has followed the same distinction on which the [Second] and [Third

Circuits] relied, explaining that 'situations where a nonsignatory attempts to bind a

signatory to an arbitration agreement' are crucially different from those where 'the

signatory . . . is attempting to bind the nonsignatory . . . to the arbitration agreement.'"

*Id.* (quoting *Nitro*, 453 F.3d at 999).

### 3.     That someone is an agent does not bind him to a contract.

"Generally, of course, an agent of a disclosed principal, even one who

negotiates and signs a contract for her principal, does not become a party to the

contract." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F. 3d 435, 445 (3d Cir. 1999).

This makes sense.  If non-signatories could be compelled to arbitrate merely on their

status as agents, "every agent of a party who agrees to arbitration would have to

arbitrate individual obligations assumed independently of the contract of agency."

*Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1516 (3d Cir. 1994).

According to Ante5, however, *Bel-Ray* "is distinguishable on its facts."  (Reply,

DE 39 at 9:8-9.)  Ante5 suggests that unlike in *Bel-Ray*, here there are facts that Ryan

negotiated the APA and/or "made representations to induce [WPTE] to enter into it"

(Reply, DE 39 at 9:23-25), Ryan "agreed to the arbitration clause"  (*id.* at 9:26-27),

and the APA contains language that "all disputes relating to the 'formation of the

contract must be arbitrated" (*id.* at 9:28-10:1).

But Ante5 offers no evidence to support these "facts."  Rather, it again falls

back on its general allegations in its Demand for Arbitration.  For example, Ante5

notes "[i]n the Arbitration Demand, [it] alleges that Ryan, the negotiator and deal-

maker for the APA, made fraudulent misrepresentations which induced Ante5 to enter

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

12

into the APA." (Motion at 14:14-16, citing the Demand for Arbitration ¶¶ 21-37.) Ante5 "also alleges that Ryan was aware of the arbitration agreement in the APA and agreed to it." (*Id.* at 14:17-18, citing Demand for Arbitration ¶ 33.)

Ante5 disingenuously argues that these allegations are enough to force Ryan to arbitrate because "[t]he cases decided by the Ninth Circuit which allow a signatory to compel a non-signatory agent into arbitration require [only] a nexus between the claims made against the agent in arbitration and the alleged acts of the agent." (Reply, DE 39 at 3:2-5, citing *Amisil*; *see also id.* at 3:13-14 ["the allegations in the Demand themselves demonstrate the nexus required by the Ninth Circuit in order to compel a non-signatory agent such as Ryan into arbitration"], emphasis in original.) But as discussed above, *Amisil* does not govern the analysis of whether Ryan must arbitrate.

### 4.    Forcing non-signatories to arbitrate is rare.

"Arbitration agreements apply to nonsignatories only in rare circumstances." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir. 2003). These rare circumstances are found only after a "*full* showing" of some accepted exception to the general rule that non-signatories are not bound to an arbitration provision; that is, after the presentation of admissible evidence. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-80 (2d Cir. 1995) (emphasis in original) (holding that non-signatory could not be compelled to arbitrate because there was no evidence supporting any of the "limited theories upon which this Court is willing to enforce an arbitration agreement against a nonsignatory"). One such theory is agency. *Comer*, 436 F.3d at 1101. But to take advantage of this theory, the moving party must submit evidence in support of its motion.

### 5.    Ante5 submits no evidence that Ryan is bound to the APA.

Notwithstanding this black-letter law, Ante5 has come forward with no evidence to support its motion. Without evidence, it cannot overcome the presumption that Ryan is not required to arbitrate. Nor can it show that Ryan is bound to the APA. A non-signatory can be compelled to arbitrate under an agency theory only if the

13

1  signatory entered into the contract on the non-signatory's behalf with actual, implied,

2  or apparent authority to do so.  *Bel-Ray*, 181 F.3d at 445.  Thus, absent evidence

3  showing that Peerless entered into the APA on Ryan's behalf with actual, implied, or

4  apparent authority to do so, Ante5 cannot prevail on its agency theory.  As Ante5 has

5  come forward with no such evidence, even if the Court were inclined to grant Ante5

6  relief from the strategic misstep of failing to submit evidence it had in its possession

7  when it filed the earlier motion, the motion for reconsideration should be denied.

8  **6.      Ryan is not bound to the APA "as a matter of law."**

9       Perhaps because it has no evidence showing that Peerless intended to and had

10  the authority to bind Ryan to the APA, Ante5 tries to argue that Ryan is bound to the

11  APA as a matter of law.  Ante5 contends that "as a matter of law, Ryan is an agent of

12  Peerless" because "***implicit*** to the allegations in the FAC is the fact that bwin.party is

13  the successor corporation to PartyGaming, the holding company and parent to

14  Peerless.  (Motion at 15:1-5.)   Suffice it to say, an implication in an allegation cannot

15  rise to the level of successorship as a matter of law.

16       Ante5 also argues that Ryan is bound to the APA as a matter of law because of

17  the allegations in its Arbitration Demand:  "all of Ante5's claims against Ryan relate

18  to his representations and inducements as CEO of PartyGaming and authorized agent

19  of Peerless, PartyGaming's wholly owned subsidiary, in negotiating the APA and

20  therefore Ryan is bound by the APA as a matter of law."  (Motion at 4:23-27.)  There

21  can be no question "[i]n the Arbitration Demand, Ante5 ***alleges*** that Ryan, the

22  negotiator and deal-maker for the APA, made fraudulent misrepresentations which

23  induced Ante5 to enter into the APA."  (Motion at 14:14-16, citing Ante5's Demand

24  for Arbitration, emphasis added.)  "Ante5 also ***alleges*** that Ryan was aware of the

25  arbitration agreement in the APA and agreed to it."  (*Id.* at 14:17-18, emphasis added.)

26  As discussed above, however, the party seeking to compel arbitration cannot rest on

27  the allegations in its demand for arbitration.  Rather, it must come forward with

28  evidence.  As Ante5 has failed to do so, this argument too fails.

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Ante5 then cites a wide panoply of cases that mention the word "agent" or "agency" to conclude that Ryan "is bound to the APA as a matter of law." For example, Ante5 contends that *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398 (9th Cir. 1994), stands for the proposition that "[a] subsidiary acts as the general agent of the parent corporation in the forum state when the subsidiary performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'" (Motion at 16:1-5.)

This passage from *Chan*, however, is a discussion of when a company is considered an agent vis-à-vis personal jurisdiction. One of the defendants, a German corporation, took the position that the federal district courts in Washington "lacked personal jurisdiction over [it] on due process grounds." *Id.* at 1404. The plaintiffs argued to the contrary, claiming that the assertion of personal jurisdiction was proper because a U.S. corporation "was acting as a general agent for [that defendant] in the state of Washington." *Id.* at 1405. As it was discussing this contention, *Chan* noted that in the context of personal jurisdiction, *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. 1977) "stated that 'whether the general agent was a subsidiary of the principal or independently owned is irrelevant.'" *Chan*, 39 F.3d at 1405 (quoting *Wells Fargo*, 556 F.2d at 423). As *Chan* has nothing to do with issues of arbitrability, it is irrelevant. Also illustrating its irrelevance, *Chan* found that whether the German corporation used the U.S. corporation as an agent was "a question of fact" that the district court did not reach. *Id.* at 1406. Thus, the Ninth Circuit remanded the case to the district court for additional findings. *Id.*

Ante5's other authority is similarly unpersuasive. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (1988), *Bugna v. Fike*, 80 Cal. App. 4th 229 (2000),[3] *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190 (3d Cir.

---

[3]      Further to the extent Ante5 relies on any state law cases, such authority is irrelevant because the Ninth Circuit applies federal substantive law to the analysis of

15

1    1983), and *Lu v. Dryclean-U.S.A. of California, Inc.*, 11 Cal. App. 4th 1490, 1494

2    (1992), are inapposite because they concern forum-selection clauses, not arbitration

3    clauses.[4]  *McLoughlin v. L. Bloom Sons Co.*, 206 Cal. App. 2d 848 (1962),

4    *Consolidated Rock Products Co. v. DuBois*, 312 U.S. 510 (1941), *Chicago Mill &*

5    *Lumber Co. v. Boatmen's Bank*, 234 F. 41, 45 (8th Cir. 1916), and *Goodyear Tire &*

6    *Rubber Co. v. Unochrome Int'l Ltd.*—which was ordered not published but was

7    previously published at 104 Cal. App. 3d 518 (1980)—are inapposite because they are

8    alter ego cases and Ante5 is relying on an agency theory (not an alter ego theory).

9        In sum, Ante5 has not submitted demonstrated Ryan must arbitrate "as a matter

10   of law."  Thus, Ante5's Rule 60(b) motion should be denied.

11   **IV.    ANTE5 IS A PROPER DEFENDANT IN THIS ACTION.**

12       As a brief interlude between its Rule 60 and Rule 12 arguments, Ante5 spends

13   an entire page arguing that "should the Court upon reconsideration determine that

14   Ante5 is not the successor-in-interest [to WPTE], then this action must be dismissed

15   for lack of a proper party defendant."  (Motion at 10:7-9.)  This makes no sense.

16   Ante5 admittedly is trying to hail Ryan into the Arbitration.  Therefore, Ryan's claim

17   for declaratory relief is properly asserted against Ante5.  While Ante5 will have other

18   problems if the Court determines that it is not the successor-in-interest to WPTE,

19   Ante5 cannot escape this lawsuit because of such a determination.

20

21

22

23

---

24   the issue of arbitrability, including whether a non-signatory is bound by the arbitration
     provision.  *Comer*, 436 F.3d at 1101.

25   [4]     Ante5 cites *Coastal Steel Corporation v. Tilghman Wheelabrator Limited*, 709
26   F.2d 190 (3d Cir. 1983), for the proposition "A contract should be enforced against a
     non-signatory where not doing so would cause inconvenience for the party forced 'to
27   proceed in two separate forums against the separate defendants.'"  (Motion at 13:28-
     14:2.)  But *Coastal Steel* merely notes in passing:  "while it would be inconvenient for
28   Coastal to have to proceed in two separate forums against the separate defendants, in
     this instance Coastal does not face that problem."  *Id.*, 709 F.2d at 203.

**PLAINTIFF'S OPPOSITION TO MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OR,
IN THE ALTERNATIVE, TO DISMISS UNDER RULE 12(b)(6)**

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

## V. ANTE5'S RULE 12(b)(6) MOTION SHOULD BE DENIED.

### A. Successive Motions Invoking Rule 12 Violate Rule 12.

With its initial motion, Ante5 sought "an order of dismissal pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction." (DE 27 at i:13-14.)  Finding that it has subject matter jurisdiction because "[w]hether a non-signatory party has agreed to submit to arbitration is a question of arbitrability," the Court denied Ante5's Rule 12(b)(1) motion.  (Order, DE 45 at 4.)  Thus, the instant motion—which invokes Rule 12(b)(6)—is Ante5's second Rule 12 motion attacking the operative complaint.

One of the purposes behind Rule 12, however, "is to avoid the delay occasioned by successive motions and pleadings." *Neifeld v. Steinberg*, 438 F.2d 423, 429 (9th Cir. 1971).  To that end, Rule 12 sets forth that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  Stated another way, "Rule 12(g)(2) "prohibits the filing of successive motions to dismiss." *U.S. v. Molen*, 2011 WL 1810449, *2 (E.D. Cal. May 9, 2011).

Ante5 argues that it has not run afoul of Rule 12(g)(2) because "a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss." (Motion at 11:12-14.)  While this is the rule where the defendant moves to dismiss, the plaintiff amends the complaint, and the defendant thereafter files another motion to dismiss—as illustrated by the three cases Ante5 cites—it is not the rule where the defendant files successive Rule 12 motions attacking *the same complaint*.  To the contrary, the "well-established principle" in Rule 12(g)(2) prevents litigants from taking a 'second bite at the apple.'" *Yumul v. Smart Balance, Inc.*, 2011 WL 1045555, *4 (C.D. Cal. March 14, 2011).

Ante5 also argues that it "is permitted to separately move to compel arbitration and to dismiss the complaint." (Motion at 11:23-24.)  While true, this is irrelevant. Ante5's earlier motion sought to compel arbitration ***and*** to dismiss the complaint

17

under Rule 12.  And the Court denied both motions.  (Order, DE 45 at 3-4.)  Thus, the situation presented here is a second Rule 12 motion made against the same complaint. None of the authorities Ante5 cites—*Kilgore v. KeyBank, N.A.*, 712 F. Supp. 2d 939, 944 (N.D. Cal. 2010), *Janda v. T-Mobile, USA, Inc.*, 2009 U.S. Dist. LEXIS 24395, 2-3 (N.D. Cal. Mar. 13, 2009), and *Johnson v. Couturier*, 2007 U.S. Dist. LEXIS 81848 (E.D. Cal. Oct. 25, 2007)—addresses this situation.[5]

Ante5 cites no law explaining why it should be permitted to bring a second, successive Rule 12 motion on a ground that was available to it when it filed its first Rule 12 motion.  Thus, Ante5's second Rule 12 motion should be denied.

### B.      The Amended Complaint States a Claim for Relief.

Ante5 contends that Ryan "cannot state a theory on which relief can be granted because he is bound by the arbitration agreement as a matter of law."  (Motion at 17:25-26.)  According to Ante5, Ryan is bound to the arbitration agreement as a matter of law because "as a matter of law, Ryan is an agent of Peerless with respect to questions surrounding the 'formation, interpretation, performance or breach' of the APA."  (*Id.* at 16:23-17:1.)

But to make this argument, Ante5 again relies on the mistaken premise that *Amisil* governs the situation where a signatory seeks to force a non-signatory to arbitrate.  (Motion at 13:14-19.)  Thus, the primary evidence it offers is the allegations in its Demand for Arbitration to support its motion to dismiss.  (*Id.* at 14:14-23; *id.* at 16:10-11.)  But as discussed above, Ante5 must show that Peerless entered into the APA on Ryan's behalf with actual, implied, or apparent authority to do so.  *Bel-Ray*, 181 F.3d at 445.  Ante5 does not even try to make this showing and the First Amended Complaint and evidence submitted by Ryan demonstrate otherwise.  (FAC ¶ 38; Ryan Decl., DE 37-2 ¶¶ 9-10.)  Thus, Ante5's Rule 12 motion should be denied.

---

[5]    *Kujawski v. Solis*, 2009 U.S. Dist. LEXIS 32887 (S.D. Ill. Apr. 17, 2009), also cited by Ante5, has no applicability here; after answering the complaint, the *Kujawski* defendants filed a motion for judgment on the pleadings under the authority of Rule 12(c).  *Id.* at *2-*3 n.2.  This is expressly permitted.  Fed. R. Civ. P. 12(g)(2); Fed. R. Civ. P. 12(h)(2)(B).

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543

Moreover, in furtherance of its scatter-shot approach to the law, Ante5 now seems to be making an alter ego/veil piercing argument. That is, it recognizes that PartyGaming and Peerless are separate corporate entities: in 2009, PartyGaming was "the holding company for a number of wholly-owned subsidiaries," including "the parent of Peerless." (Motion at 15:10-14.) And it has also explained in a letter to its stockholders filed with the SEC that the obligation under the APA is an obligation "only of Peerless Media Ltd. and its immediate parent company, ElektraWorks Ltd. and does not represent a financial obligation of PartyGaming PLC." (Nelson Decl., Ex. F, DE 49-6 at 3.) Despite these pronouncements, Ante5 quotes three alter ego cases (*id.* at 15:15-28) and a case that discusses agency vis-à-vis personal jurisdiction (*id.* at 16:1-9) to conclude that Ryan is bound by the APA.

"Veil piercing determinations are fact specific and 'differ[ ] with the circumstances of each case.'" *Thomson*, 64 F.3d at 777 (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)). Therefore, to the extent Ante5 is trying to use the instant motion to prevail on an alter ego/veil piercing theory, doing so with a Rule 12(b)(6) motion is wholly inappropriate. And this type of misguided argument cannot overcome that the First Amended Complaint states a claim for relief.

## C.   Converting this to a Rule 56 Motion Would Be Unavailing.

Given that it is trying to introduce "evidence" in support of its alter ego/veil piercing arguments, in a footnote, Ante5 asks that the Court "treat the Motion as a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d)."[6] (Motion at 16 n.8.) But doing so would not save Ante5's motion. As noted above, veil piercing is a fact-specific inquiry and is proper only where "among other things, [the] parent and subsidiary 1) share common office and staff; 2) are run by common officers; 3) intermingle funds; 4) do not deal at arms length with each other; and 5) are not treated

---

[6]     Ante5 did not notice its motion as a motion for summary judgment in violation of L.R. 7-4. Had it wanted to move for summary judgment, Ante5 should have so moved and lodged a proposed Statement of Uncontroverted Facts and Conclusions of Law" and a proposed Judgment. L.R. 56-1.

**Winston & Strawn LLP**
333 South Grand Avenue
Los Angeles, CA 90071-1543

1  as separate profit centers." *Thomson*, 64 F.3d at 778 (citing *Wm. Passalacqua*

2  *Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).

3        Ante5 does not try to introduce evidence of any of these elements.  Rather, it

4  references the allegation in its Demand for Arbitration that "Ryan negotiated the asset

5  purchase of WPTE and the terms of the APA as an agent of Peerless" (*id.* at 16:10-

6  12.), notes that Ryan signed a single letter as an "authorized signatory" of Peerless (*id.*

7  at 16:12-16, citing 2d RJN Ex. A at 221-26), and highlights that a PartyGaming memo

8  exists discussing the purchase of WPTE (*id.* at 16:16-18, citing 2d RJN Ex. A at 212-

9  16).  It is unclear how these facts conclusively support a finding of alter ego.  That an

10 annual report highlights an acquisition by a subsidiary at least three steps removed

11 (Motion at 16:18-19) and "refers to it as an acquisition of the 'Group'" (*id.* at 16:20-

12 22) is inconclusive—especially in the face of Ante5's admission to its own

13 stockholders (filed with the SEC) discussed above.  Thus, even if the Court were to

14 convert this to a motion for summary judgment, such a motion should be denied (or, at

15 a minimum, only after initial disclosures have been made, initial discovery has been

16 served, and such a motion is properly noticed).

## VI.  **CONCLUSION**

18       For all the foregoing reasons, Ryan respectfully requests that the Court deny

19 Ante5's Motion for Leave to File a Motion to Reconsider or, in the Alternative, to

20 Dismiss Pursuant to Fed. R. Civ. P. Rule 12(b)(6) in its entirety.

Respectfully submitted,

Dated:  August 29, 2011            **WINSTON & STRAWN LLP**

By:      /s/ David H. Stern
                  David H. Stern
                  Christian E. Dodd

Attorneys for Plaintiff JIM RYAN

Winston & Strawn LLP
333 South Grand Avenue
Los Angeles, CA 90071-1543